Good morning all. Our first case for argument this morning is the City of South Bend versus the Common Council of South Bend. Mr. Pfeiffer. Good morning. I'm Daniel Pfeiffer. I represent the police officers, Young and others. Mr. Sullivan and I will be dividing the 20 minutes allotted. I will be taking 8 minutes. Mr. Sullivan will be taking 12, saving 5 for rebuttal. My comments and arguments will be limited to the position that the police officers are taking in response to the appeal, cross-appeal filed by the police. Counsel, what issues concerning the police officers are still live in this case? Haven't they all been settled? They have not all been settled because it is our position that when Judge Van Bachlen entered his order, he determined that the cassettes that had been generated subsequent to February 4th violated the federal wiretap act. Well, I've looked at the record and there are a bunch of all of the claims by and against your clients have been dismissed. You can't appeal because you don't like a district judge's order if your clients or claims have all been dismissed. Well, our position is and we were involved in the trial of this. I know you were involved in the trial but you nonetheless dismissed your claims. We dismissed our claims for damages as it relates to the declaratory judgment. You're not answering my question. Saying we fully participated in something doesn't mean you're still parties. What concretely is a live issue that has not been dismissed per a settlement with respect to your clients? The disclosure whether the tapes that were recorded can or cannot be when your clients have settled all disputes about the consequences of that? We've settled as it relates to monetary damages. We did not resolve the case as it relates to... How are your clients entitled to anything other than monetary damages? The disclosure or non-disclosure of those tapes that our clients or my clients, the police officers, have an interest in and that was not a part of the resolution or the settlement. Let me put this a different way. Have you ever found a case in which the parties had settled and dismissed all of their damages claims in which a declaratory judgment was nonetheless treated as still live? The function of a declaratory judgment is to set up relief on the by agreement of the parties. Relief on the merits included whether includes... You're not listening to my question. I asked you, are you aware of, have you ever heard of a case in which a court held that a declaratory judgment suit was live after the parties had settled their dispute about liability? I cannot cite such a case. No, and I'm not aware of one either. I should think that's a problem for you. It is our position that the disclosure or non-disclosure... I know it's your position, but lots of people want the judiciary to issue advisory opinions and that just doesn't cut it. You need things like authority. We were defendants in the declaratory judgment action filed by the city. The city pursued the action for purposes of a determination as to whether the violation of the Wiretap Act occurred. I can't respond any differently to the court. So in the dismissing all the claims, did you carve out the declaratory judgment part of your case? That was not a part. That was not a part. I'm just trying to get clarity on the dismissal. So it was just money damages, but there was no reference to the declaratory judgment? That is correct. Is there a specific reservation along those lines? The reservation in the documents indicated that we would still fully participate in the declaratory judgment action. For the purpose of determining whether or not those tapes should be turned over? Yes, Your Honor. And that was some language, what document was that? That was in the Release and Settlement Agreement that was reached with the City of South Bend. Is there a request for the district judge to rule on this reservation that you speak of, Mr. Cook? There was no such request made. There was no objection to our participation in the trial by either the City of South Bend or the South Bend Common Council. No, but I do not believe that that would be a part of the record or the appendix. That was the release that was signed by the police officers. It was never introduced at the trial, and I don't believe it was... That was on the subject of discussion by the parties when the dismissal was had, that you were going to still remain concerned about disclosure? The discussion was that when the case settled for the monetary damage component, the police officers would still remain a party and still fully participate in the declaratory judgment action trial. That document, the release, was not, I'm almost positive of this statement, made a part of the record. Typically, releases would not be a part of the record, number one. And number two, that issue was never discussed at the district court level. It may not have been discussed, but I'm now staring at a couple of stipulations. One of them, which is signed by you, says, the parties, by their respective counsel, agree and stipulate to the dismissal of this cause of action with prejudice for the reason that the matters in controversy have been fully settled. That sure looks like a dismissal of everything. That stipulation of dismissal pertained to the lawsuit that the police officers had against the city of South Bend. There were multiple claims that were combined and consolidated into the declaratory judgment action. Yeah, well, I can't find that in any of these dismissal orders, which look unconditional, except for the one that says... Perhaps we need some further... Yeah, and because in terms of those orders... So you're just saying those various actions had assigned to them different numbers. So are you saying that after you provide us with the documents, because I think we're gonna need the additional documentation, that that stipulation is tied to the specific case that asked for monetary declaratory judgment? Yes, Your Honor. I notice my time is up. I... Just one second. All right. Thank you. Thank you. Mr. Sullivan. Thank you, Your Honor. May it please the court. My name is Ed Sullivan. I represent the city of South Bend. Mr. Sullivan, for you, I have a jurisdictional question based on the caption of this case. Yes, sir. How is it possible to have a suit captioned, South Bend v. South Bend? Your Honor, the city of South Bend is a political subdivision, the administration, the mayor of South Bend. Yes. It's a separate entity. And one would think you couldn't have a suit captioned, President of the United States v. Congress of the United States. Your Honor, under Indiana law, those are two separate entities. Indiana law is irrelevant in federal court. There has to be a justiciable controversy between real adverse parties. And you can't have a lawsuit between, say, divisions of General Motors. As far as the federal government is concerned, different parts of a state, indeed different parts of South Bend, are like divisions of General Motors. We're different subsidiaries of General Motors. And I don't understand how there can be a lawsuit between them. I trust you agree with me that one part of General Motors can't sue another part. I agree with you. So how can one part of Indiana, that's all the city of South Bend is, is a part of Indiana. How can one part of Indiana sue another part of Indiana in federal court? I understand how you might be able to do it in state court. I don't see how you can do it in federal court. Your Honor, the legislative, investigative powers of the legislative body statute in Indiana gives the common counsel the right to sue services from them. I don't think you're hearing me. It doesn't matter. No legislation in Indiana can authorize a lawsuit in federal court. It's a principle of federal law that municipalities are subdivisions of the state. The question is, how can one subdivision of the state sue another subdivision of the state in federal court? This might be a perfectly fine in state court. I just don't understand it in federal court. A subpoena was served on the mayor, Your Honor, and that the federal law governs whether the mayor can respond to that subpoena. If there is a rule of federal law that one part of a state can't sue another part of a state, and by the way, we have decisions to that effect. We held, for example, that Chicago couldn't sue its airport authority based on that principle. If there are decisions to that effect, the fact that there's a question of federal law doesn't matter. One part of General Motors can't sue another part of General Motors, even if there's a question about the meaning of the Federal Transportation Safety Act. Your Honor, I understand that your point that they're both political subdivisions of Indiana, but they have separate status within that. So do you want us to overrule the decision saying Chicago can't sue the Chicago airports or the reverse? As I say, we've got cases on this. The Supreme Court has cases on this. Yes, Your Honor, and I would be happy to try and brief that issue. It came up briefly to the federal trial court. Well, we may need that, and we would also, I think, need you to brief the question whether the issue arises under federal law. The question whether the Common Council can enforce a subpoena against somebody else appears to arise under state law or maybe local law. Then federal law might be a defense to a subpoena enforcement, might be relevant to subpoena enforcement, but it's a pretty fundamental rule of federal law that, with rare exceptions, the claim arises under the law that creates the cause of action. And the thing that creates the right to issue a subpoena is state law, not federal law. Yes, Your Honor. I'd be happy to address that in subsequent briefing. All of this should have been addressed, and I say this to you as well as to Mr. Palmer. Jurisdiction is the first question in every federal case. The briefs filed by the parties in this case just proceed as if federal jurisdiction were something everybody could ignore. It isn't. We used Mr. Pfeiffer's entire time asking for things that should have been dealt with with care in the briefs, and you won't have much time either. Yes, Your Honor, federal jurisdiction came up in relation to a motion to dismiss by the counsel. It did not cover these issues that you have raised, and we would be happy to address those issues. We'll direct an order today that speaks to this issue of further briefings. Your Honor, would you like me to address the other issues that have been raised? Time remaining, sure. Thank you, Your Honor. Your Honor, the facts determined by Judge ordinary course exclusion did not apply after February 4th, because there was knowledge of the taping after that. But really, those facts were no different prior to February 4th, and those facts established that there was a capture of conversation, private conversations, that fit the definition of an interception under 2510.4. So consequently, since it is an interception under the statute, then there's the knowledge that was acquired by the South Bend Police Department of the capture of Brian Young's calls. That knowledge doesn't change the status of the interception. And if it's an interception, and if it's not authorized, and it doesn't fall within the ordinary course exclusion, and there's no other exception, then that interception violates the Wiretap Act. Under 2515, the contents of those reportings cannot be received in evidence, and that's what the subpoena by the Common Council is attempting to do. So the fact that the police department became aware of that interception on February 4th doesn't change the basic fundamental fact that this is an interception under the law. The knowledge is irrelevant to the definition of interception, and the knowledge is irrelevant to the ordinary course exclusion, and the knowledge is irrelevant to the prohibition of use contained in 2515. Consequently, when you apply that law, then you find that all of the interceptions are prohibited by the Wiretap Act. And Judge Van Bakken's opinion ends up creating a kind of exclusion, an implied exclusion. He ruled that you need intent even under the ordinary course exclusion analysis, and the text of the statute just doesn't support that. The structure and the purpose of the Wiretap Act is to protect individuals' privacy in their telephone conversations, and to create a process for legitimate law enforcement eavesdropping. If the opinion is allowed to stand as it is, it leaves unprotected potentially a vast number of individuals and their conversations, which occurred without knowledge, without consent, without permission, and not pursuant to a routine non-investigative procedure. So those are the only ways that you get to consent, or they participated in the interception, or it falls under the definitional exclusion, because it's part of a routine and non-investigative process or ordinary course. By using the knowledge of the capture of the calls as the point of departure, he's created an exclusion that doesn't exist in the statute. I believe, Your Honor, that the facts in the record are very strong in supporting the ordinary course exclusion. What we have here is a mistake by a secretary who plugged a wire into a phone jack because she didn't know where else to put that wire, and it ended up having an empty office, and when someone moved into that office, they ended up being recorded. Now that's not a routine, and it's not a regular part of the South Bend Police Department. The department captured in a regular way the front desk and the 911 lines, and then they had for specific purposes. When one officer had his line hooked up at his request and then retired, that line inadvertently began to be used by someone who didn't request that. So just as in Amati, where this court ruled that you need a routine non-investigative process to fit within the ordinary course exclusion, and in was the ordinary course, and this court said the facts don't compel a different result. Here, the facts don't compel a different result than what Judge Van Boklen found. That is, there was not a routine non-investigative process. So we believe that the court should be upheld in relation to the order finding that the it didn't apply after February 4th, it doesn't apply prior to February 4th either. Your Honor, my yellow light is on, and if I can, I simply reserve the time for rebuttal. Thank you. Thank you, Mr. Sullivan. Mr. Palmer. Good morning, Your Honors. Judge Eastbrook, in response to some of your questions, the Common Council did file a motion to dismiss based on lack of subject matter jurisdiction. It was our position that when the Common Council filed their motion to compel in state court, that that was proper, but the reason that we were drug into federal court was because the City of South Bend was using the Federal Wiretap Act as a basis for, as a defense to the motion to compel, and as a basis for federal court jurisdiction. We raised the issue that a defense... Yes, your brief recites that the motion to dismiss was denied. That's correct. And then it just completely ignores the issue. It doesn't address it for us to consider, right? It's for us too, and our rules say that. I don't see how you can file a brief that says, we denied that there's subject matter jurisdiction, period. Now let's go on to the merits. I understand, Your Honor. It would have been more required. I understand that. And that's not all. We have these settlements to deal with. Your Honor, if I may, as much as I have not agreed with Mr. Piper on many things in this case, or anything in this case, it was our understanding that these would be as to the damages brought by... And you heard my question to Mr. Piper, which is, how is that possible? If you settle the dispute about damages, isn't any further dispute about declaratory relief simply a request for an advisory opinion? It would be as to Mr. Piper's client, but the litigation as to the City of South Bend and the South Bend Common Council would... That, I understand how there is a live dispute between the City and the Common Council, but I have a very hard time understanding how Mr. Piper is doing anything other than requesting an advisory opinion. If we have the dispute between the City and the Common Council, that's live, all right, but the question is whether it's within federal jurisdiction, on which your brief and the City's brief are entirely silent. This is very disappointing. I apologize for disappointing you, Your Honor. On the merits of the case, contrary to what Mr. Sullivan said, there is a distinction in the analysis of the law under the recordings that were recorded inadvertently, and those recordings which continued after it was discovered that the recordings were being made. Their argument is that... You used the word inadvertently. I don't understand how anything in this case was inadvertent. Wiretapping of that line, well, the recording of that line, wiretapping is a bad word, the recording of that line was deliberate. It was done deliberately, and the police department set out to record that line, and it did. Yes, Your Honor. What happened was the person using the line changed, but the recording of the line was deliberate from the outset. How is anything inadvertent? The inadvertency, as you pointed out, was in who was being recorded. Yes, but the recording of the line was deliberate. When the federal statute uses the word intentional recording, do you think it means intentionally overhearing a particular person, or does it mean intentionally recording a line? I believe it means intentionally recording a line, and we have made that point. Yes, well, one would think so. How did this litigation get sidetracked into the question whether intentionally recording a particular person was relevant? It got sidetracked, Your Honor, because Judge Riffan Bachlan, after trial, gave specific questions to the parties that he wanted to be addressed. One of the questions was if the recordings were unintentional, were they illegal? Yes, but it's plain the recordings were intentional. It may be that it was unintentional that a particular person would be heard. I won't pursue you on when and how that issue got introduced, but the district judge's opinion never explains why he thinks that there has to be an intent to overhear a particular person, as opposed to an intent to record a particular line. And, Your Honor, it did first come up in the post-trial briefing as a result of Judge Riffan Bachlan's question. And in those briefs, we took the position that the recording was intentionally made, that the recording of this particular officer was inadvertent, and on that basis, Judge Riffan Bachlan took off on his distinction between intentional and unintentional recordings. To the extent that you just completely lose me. The recording was intentional. Overhearing a particular person was not. And so the legal question that needed to be resolved was whether overhearing a particular person has to be intentional to come within the statute. And no one's addressed that. It was addressed in the post-trial briefing to Judge Riffan Bachlan. We're not a post-trial brief. We are the U.S. Court of Appeals. We expect to have that question addressed here. It wasn't addressed by the district judge. He didn't mention it. It's not addressed here. How are we supposed to resolve this case if the critical legal issue, starting with jurisdiction and going on to the meaning of the word intent in the federal statute, are just ignored by the parties? Well, Your Honor, I submit to you that we were addressing the issues raised by the district court's opinion itself and his analysis, and those were the arguments that we raised in the briefs to this court. Let me just ask you, I'm just curious, why does the counsel want access to these recordings? The background, Your Honor, is that Karen DePaepe And while you're addressing that, why are they a matter of public importance? And that's all one question. Karen DePaepe, who overheard these conversations when she was checking the system for malfunctions because it was crashing, heard something that caused her to believe that conversations involving one police officer and whoever else was on the line, we don't know because we've never had access to any of it, raised an issue that she felt created an ethical problem or a legal problem, that the discussions gave concern to whether the police officer was involved in something illegal or unethical. She then took the issue to the chief of police. Somehow, the federal district attorney got involved and started to investigate whether the police department was violating the wiretapping. In the meantime, the chief just continued to record, as I understand. The chief continued to record. The chief didn't get any kind of court order or anything like that. No, the chief did not do anything other than what was being done beforehand. The evidence is clear that the recordings would stop only if the chief of police made a decision to stop them. He did not. He did not order it to continue. He did not order it to stop. So Karen DePave had no option. But, I mean, he de facto approved it. Yes. Yeah. Yes. So this came to the Common Council as there's a concern that one or more of your police officers, or the city's police officers, is involved in illegal or unethical conduct. Now, under the Indiana state statutes, the Common Council has the right and the obligation to investigate its agencies and its employees. So, pursuant to the Indiana state statute, the Common Council issued a subpoena to the city of South Bend asking for those recordings. Just to clarify, it may not make a difference. We're not talking just about the cassette tapes. We're talking about the recordings that have been preserved by the voice logger system. We've been using tapes as a shorthand, but it's an entire set of recordings. We requested those. So the Common Council could investigate whether anything was unethical or illegal as disposed by these telephone conversations. And the Common Council was aware of the Federal Wiretap Act and its requirements. I assume so, Your Honor. They're presumed to know them. However, the Federal Wiretap Act has an exclusion for recordings made in the ordinary course of law enforcement business. And it is our position, supported by Amati, that the recording of telephone calls to and from police stations is inherently within the ordinary course of law enforcement business. Amati specifically said that if ordinary course means anything, it means the recording of those calls to and from police stations. Now, Amati used the word all calls. And we've been arguing about whether or not the exclusion requires that every single call on every single line is required for the ordinary course exclusion to apply. Common Council does not believe so. It's our position that any calls that are recorded, that are normal calls into and out of a police department telephone system, that wasn't targeted as part of an investigation, are subject to the exclusion of the wiretap. But isn't Amati distinguishable since there the police chief intentionally recorded the untapped line, but here there was no intentional decision to record the line before the February 4th discovery? Well, Your Honor, that takes us back to Judge Easterberg's question, whether or not it was intentional that they recorded the line. And it was intentional that this line would be recorded. What happened was everyone forgot about it being recorded because it got passed down to three or four different officers after the initial recording. Yeah, no, but I'm just saying Amati isn't as helpful to you as you might think. That's all I'm saying. There's a difference. I think there's a distinction here. I don't understand the distinction, Your Honor, because in Amati, the police chief told the police department that all lines will be recorded except this one line, which you can use for personal calls. Nine years after he did that, he changed his position and ordered that that unrecorded line suddenly be recorded. He did not give notice to anyone in the police department of the change in position. The recording at issue in Amati was on what had been an unrecorded line, and this court ruled that that didn't matter because calls into and out of police departments are within the ordinary... Recording those calls is within the ordinary course of law enforcement business. So therefore, even though nobody had noticed that this line was being recorded, in fact there had been representations that the line would not be recorded, and those representations were made even after the decision to record the line. This court ruled that the ordinary course exclusion applied. We have a very similar thing. When we taped this line, we recorded this line as part of the police department's telephone system to ensure compliance with regulations by the police officers to gather evidence of calls coming in to a police officer. At that time, it was Captain Bishop. We recorded this line to give proof that the police officers were handling calls correctly. All these things are what this court found in Amati to be within the ordinary course exclusion. That never changed. It was forgotten whose line was being recorded, but the purpose of recording that line never changed. Now, going back to the distinction between inadvertent calls and intentional calls and putting aside Judge Easterberg's concern that this line was always intentionally recorded. That's correct. Looking at whether Officer Young's conversations were being recorded, that was inadvertent. The city and the police officers have taken the position that the definitional part of the statute, 1825.10, creates a situation in which every interception is illegal. The definitional part of the statute doesn't create any illegality. What creates the unlawfulness of a recording is section 25.11, and in each subdivision of that section, it requires intentional conduct. There's no question that Officer Young's line was not intentionally recorded, or Officer Young's conversations were not intentionally recorded. It was very difficult to find law on whether inadvertent recording of conversations fall within the Wiretap Act. However, the United States Supreme Court in Bartnicki v. Fopper, which I've cited in my brief, made a statement saying, we assume that the calls were intentional, or the recordings were intentional, and therefore unlawful. That struck me as being a little unusual in the way they worded that, so I traced it. My take on it was, by saying that, they were implying that if calls were not intentional, they were not unlawful. I traced back to the district court opinion in Bartnicki. In fact, that was a defense that was being raised in that case, that the calls were not intentional, or the recordings were not intentional, and therefore they were not unlawful. In support of that, the parties had cited a case which I submitted to this court in an additional authority, which we submitted yesterday, the Bages case, which is the only case in the country that I could find that specifically said, inadvertent recordings are not unlawful under the Wiretap Act, which is our position all along. It is what Judge Van Bachlen's position was. They were inadvertent, they are not covered by the act, and therefore they could be disclosed. The city and the police officers also point to sections 2515 through 2519 as supporting their argument that the definition creates illegal acts. Well, 2515 through 2519, this court ruled in high fructose corn syrup litigation, was a self-contained section of the statute, which applied only to recordings that had been authorized by a court. In other words, court authorized wiretapping for an investigative purpose. And that same analysis was applied in the Fourth Circuit in the Hammond case, which we've also cited in our plea. So for those reasons, although Judge Van Bachlen's order came as a surprise to us because he raised an issue that we had not addressed originally in the summary judgments or at trial, lo and behold, it looks like he was correct. Inadvertent recordings, if they are inadvertent, I understand, Your Honors. Yes, if inadvertence means inadvertently hearing a particular person as opposed to inadvertently recording the line. And to repeat, no one has addressed which of those the statute means. In your analysis, that's the critical question. And your brief doesn't mention it. It does not, Your Honor. I understand that. The other part of our argument is simply whether or not the ordinary course exclusion applies. Again, going back to Amati, I believe that none of the distinctions that they've attempted to raise from Amati are distinctions with any merit. I don't believe this court meant to say that every phone call on every single line needed to be recorded in order for the ordinary course exclusion to apply. I don't believe this court believed or ruled that you have to have a set routine in order for the exclusion to apply because if you have a set routine that's known to everybody, then everybody knows which lines are being recorded. And this court said in Amati, that's not necessary because everybody knows that calls to and from police departments are recorded, and that gives implicit notice. Amati was in 19- Counsel, let's suppose that somebody sets out to record a line and they have no idea who uses the line. But they know that this is a live number and they record it just because they're nosy. Okay? Can anybody sue about that? In your view, I assume the answer is no because they had no idea who was going to use the line and, therefore, with respect to anybody who used the line, the recording was inadvertent. Can that possibly be right? No, Your Honor, I don't believe it is. It can't possibly be right. It isn't, and that is an exception that was set out in Amati that if the recordings are made for a purpose of intimidation, harassment- No, no intimidation or harassment. My hypothetical was they're just nosy. They're not going to intimidate. They're not going to harass. They're just nosy. And I believe that being nosy would fall within that same category. It's not intimidation and it's not harassment. We need to use English words in other than Humpty Dumpty's way. Yes, Your Honor. Thank you. Mr. Sullivan. Thank you, Your Honor. The city or the officers have never made the argument that the only way the ordinary course exclusion applies is if you record every single call. What we've done is tried to distinguish the facts in Amati from the facts in this situation. It's very clear that this court said that ordinary can't be used in a way that is literal. That's actually what the opinion says. You can't apply it literally because it's ordinary for police officers to investigate. And this court then went on to say ordinary means two things. It's got to be a routine, non-investigatory. And the typical place police departments do that is emergency 911 lines and incoming calls from the public. Now, the South Bend Police Department is a large urban police department. It has hundreds of officers and hundreds of lines. And it has a subset which it has put within that ordinary course procedure. And it's an indiscriminate recording of whoever happens to be at the front desk. So we've never argued that it requires all. I see my time is up, Your Honor. All right. With regard to supplemental briefing, the parties will have 14 days to submit a brief speaking to jurisdiction... ..the scope of the settlement... ..and may also address the issue of the intentional recording that Judge Easterbrook spoke of when suggesting it was not covered by the initial briefing. So that's 14 days from today. Of course. Would they use that word? What's the legal meaning of that word in relation to our case? Yes. All right. The case is taken under advisement. Our thanks to all counsel.